ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| CAPARRA CONSTRUCTION, CORP.<br><br>Parte Apelante<br><br><br>v.<br><br><br>DCK/BIRD GROUP, LLC; BIRD GROUP, LLC; DCK WORLDWIDE, LLC; TAUBMAN CENTERS, INC.; TAUBMAN PUERTO RICO, LLC; PLAZA INTERNACIONAL PUERTO RICO, LLC; NEW CENTURY DEVELOPMENT, INC.; A; B; C; D; E; F; G; H<br><br>Parte Apelada | KLAN202301091 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2019CV12278<br><br>Sala: 504<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO; COBRO DE DINERO; DAÑOS |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de enero de 2024.

Compareció ante este Tribunal la parte apelante, Caparra Construction, Corp. (en adelante, "Caparra" o el "Apelante"), mediante recurso de apelación presentado el 5 de diciembre de 2023. Nos solicitó la revocación de la *Sentencia Parcial* dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 22 de septiembre de 2023, notificada y archivada en autos el 25 del mismo mes y año. Mediante el referido dictamen, el foro apelado declaró "Ha Lugar" una solicitud de sentencia sumaria parcial presentada por la parte apelada, Bird Group, LLC. (en adelante, "Bird Group" o la "Apelada"), y desestimó la reclamación incoada por los Apelantes en contra de este último.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia Parcial* apelada.

**I.**

El caso de autos se originó con la presentación de una "**Demanda**" por parte de Caparra por incumplimiento de contrato y daños y perjuicios contractuales en contra de DCK/Bird Group, LLC. (en adelante, "DCK/Bird"), Bird Group y DCK Worldwide LLC, (en adelante, "DCK Worldwide"), entre otros codemandados. Alegó que en febrero de 2014 fue subcontratada por DCK/Bird, Bird Group y DCK Worldwide para trabajar en un proyecto de construcción en el centro comercial "The Mall of San Juan". Arguyó que, tras la falta de pago de varios contratos anteriores, el 4 de agosto de 2015, se pactó un acuerdo de transacción en el cual le condonaría la cantidad de $1,867,790.01 a DCK/Bird, Bird Group y DCK Worldwide, condicionado a recibir el pago inmediato del balance total acordado por todos los trabajos realizados, según los contratos otorgados para el proyecto de construcción. Sin embargo, sostuvo que a pesar de cumplir a cabalidad con los servicios para los cuales fue contratado, DCK/Group, Bird Group y DCK Worldwide incumplieron con su obligación de pagarle inmediatamente. Por esta razón, planteó que dejó sin efecto el acuerdo suscrito y sostuvo que los demandados le adeudaban la cantidad de $2,530,916.43.

A tenor con lo anterior, arguyó que llevó a cabo gestiones de cobro infructuosas a todos los codemandados en la presente acción, por lo que sufrió daños y se vio forzado a incurrir en gastos legales para exigir el saldo de la cantidad debida. Siendo así, solicitó que se condenara a las partes demandadas a pagar la suma adeudada por los trabajos realizados, $100,000.00 por los daños resultantes del presunto incumplimiento contractual y una suma ascendente a $20,000.00 por concepto de costas y honorarios de abogado.

Luego de varios trámites procesales impertinentes a la controversia que nos ocupa, el 26 de enero de 2022, Bird Group presentó la "**Contestación a la Demanda**". En síntesis, alegó que no suscribió contrato

alguno con Caparra para el proyecto de construcción del centro comercial "The Mall of San Juan". Sostuvo que DCK/ Bird era una entidad jurídica distinta y separada de Bird Group, por lo cual solicitó la desestimación de la causa de acción que se presentó en su contra.

Luego de concluido el descubrimiento de prueba, el 7 de marzo de 2023, el Apelado presentó "**Solicitud de Sentencia Sumaria Parcial a favor de Bird Group, LLC.**". En ésta reiteró que procede la desestimación de la causa de acción incoada en su contra debido a que no existe una relación contractual entre ellos y Caparra. Ello porque DCK/Bird y Bird Group son entidades jurídicas diferentes e independientes la una de la otra y el contrato en controversia fue suscrito por Caparra y DCK/Bird. Adujo, además, que conforme surgió de la prueba, su participación en el proyecto fue como representante autorizado de DCK/Bird y que el Apelante no presentó evidencia alguna de la existencia de un contrato con Bird Group. Agregó que, en la alternativa, tampoco procedía descorrer el velo corporativo para imponer responsabilidad, debido a que Bird Group no era miembro de DCK/Bird desde el 2015 y no existía evidencia alguna que justificara hacerlo.

A tenor con lo anterior, el 12 de abril de 2023, Caparra presentó "**Moción en Oposición a Moción de Sentencia Sumaria**". Planteó que no procedía que se dispusiera sumariamente del pleito contra Bird Group, ya que existían controversias de hechos medulares que requerían la celebración de un juicio. Añadió que el descubrimiento de prueba no había culminado puesto a que Bird Group produjo sus escritos y contestaciones tardíamente. Adicionalmente, sostuvo que existía controversia en cuanto a la autoridad que ostentaba Bird Group bajo el contrato suscrito por DCK/Bird, ya que éste no era un mero supervisor, sino que *de facto* contrató y controló los servicios de construcción. Además, esgrimió que Bird Group fue parte de las negociaciones para transigir las deudas pendientes con el Apelante, por lo que no dejó de ser parte de DCK/Bird en octubre de 2015 como alegaba. Por último, señaló que del "Operating Agreement" suscrito entre DCK Puerto Rico, Bird y DCK Worldwide,

DCK/Bird no operó como una corporación ni observó sus formalidades, sino que actuó en todo momento como una sociedad o empresa común en donde sus socios o miembros se dividían las responsabilidades o ganancias.

El 4 de mayo de 2023, Bird Group presentó "**Réplica a Oposición a Solicitud de Sentencia Sumaria Parcial**". En ésta aclaró que el descubrimiento de prueba había culminado debido a que luego de la producción de documentos y contestaciones a los interrogatorios, Caparra no informó la intención de realizar deposiciones y tampoco solicitó la extensión del término del descubrimiento de prueba. Además, reiteró que Caparra no presentó evidencia alguna que sostuviera las alegaciones en cuanto a la existencia de un contrato entre éste y Bird Group. Arguyó que en la "**Oposición a Sentencia Sumaria**" Caparra presentó nuevas alegaciones sobre que DCK/Bird y Bird Group actuaron como una empresa común o *joint venture* y no como una corporación y sobre que DCK/Bird operaba como un *alter ego* del Apelado. Siendo así, entendió que el TPI no debía permitir que se añadieran causas de acción no consignadas en la "**Demanda**" inicialmente presentada. Adicionalmente, expuso que en caso de que se hubieran incluido tales alegaciones en la "**Demanda**", no se presentó prueba que justificara descorrer el velo corporativo. Además, planteó que Caparra no rebatió con prueba admisible que Bird Group no es miembro de DCK/Bird. Finalmente, sostuvo que tampoco presentó evidencia de hechos que demostraran fraude, ilegalidad o circunstancias específicas sobre que DCK/Bird operaba como un *alter ego* de Bird Group.

En atención a lo anterior, el 22 de septiembre de 2023, notificada el 25 del mismo mes y año, el TPI emitió "**Sentencia Parcial**" en la que declaró "Ha Lugar" la solicitud de sentencia sumaria presentada por Bird Group, por entender que no existían hechos materiales en controversia que impidieran la disposición parcial del litigio. Resolvió que no tomaría en consideración las nuevas alegaciones presentadas por Caparra en su oposición a la solicitud de sentencia sumaria parcial, ya que éstas no cumplían con lo establecido por la Regla 13.1 de Procedimiento Civil, 32

LPRA Ap. V, sobre enmiendas a las alegaciones. De igual manera, el foro apelado aclaró el récord sobre al tracto procesal del caso en cuanto al descubrimiento de prueba. Señaló que surgía del expediente que el 26 de agosto de 2022, las partes presentaron "**Moción Conjunta en Cumplimiento de Orden**" en la que informaron que el descubrimiento de prueba culminaría en febrero de 2023. Siendo así, el foro *a quo* tomó conocimiento de lo antes informado y notificó que las fechas no podrían ser modificadas sin previa autorización. Expuso que el 11 de octubre de 2022, Bird Group presentó un escrito al expediente judicial en el que informó que le remitió a Caparra un *Primer Pliego de Interrogatorios y Producción de Documentos*. No obstante, señaló que del expediente no surgía una solicitud de algún cambio, ni la extensión de la fecha límite para el descubrimiento de prueba por parte de Caparra, por lo que este se dio por concluido.

Añadió que Bird Group es una compañía de responsabilidad limitada debidamente registrada en el Departamento de Estado de Puerto Rico y, por tanto, las deudas, obligaciones y responsabilidades que surgieran de contratos, daños u otras formas, sólo serían responsabilidad de DCK/Bird. En conclusión, al DCK/Bird ser una compañía de responsabilidad limitada distinta y separada de Bird Group, y ante la inexistencia de un contrato entre Bird Group y Caparra, el TPI resolvió que lo correspondiente era la desestimación de la reclamación en contra de Bird Group.

Insatisfecho con dicha determinación, el 10 de octubre de 2023, Caparra presentó "**Moción Solicitando Reconsideración de Sentencia Parcial**". Alegó que no solo existían hechos materiales en controversia, sino que además la disposición sumaria del presente caso era improcedente en derecho, debido a que de los propios documentos presentados por el Apelado en su solicitud de sentencia sumaria parcial surgían hechos materiales controvertidos y que contradecían sus propias alegaciones. Evaluada dicha solicitud, el 6 de noviembre de 2023, el TPI declaró No Ha Lugar la reconsideración.

Aún inconforme, Caparra presentó ante nuestra consideración el recurso de apelación que nos ocupa. Mediante el mismo, le imputó al foro primario haber cometido el siguiente error:

**Erró el Honorable TPI al declarar Con Lugar la Moción de Sentencia Sumaria de la parte apelada, conforme a los hechos ante sí y al derecho aplicable.**

El 22 de diciembre de 2023, Bird Group presentó su alegato en oposición al recurso ante nuestra consideración.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". SLG Szendrey-Ramos v. Consejo de Titulares, 184 DPR 133, 167 (2011); Universal Insurance Company y otros v. ELA y otros, 2023 TSPR 24, 211 DPR ___ (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal.

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y

pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Mejías *et al.* v. Carrasquillo *et al.*, 185 DPR 288, 299 (2012); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 911-912 (1994). Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Roldan Flores v. M. Cuebas *et al.*, 199 DPR 664, 676 (2018).

Por su parte, la parte promovida por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Roldán Flores v. M. Cuebas *et al.*, *supra*, pág. 677; Ramos Pérez v. Univisión, 178 DPR 200, 214-215 (2010).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que **ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición**. Así que, según lo expresa el propio tribunal, "**la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera**

**colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión**". Íd., pág. 54 (énfasis suplido).

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005) (énfasis suplido).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea

le corresponde al foro de primera instancia. <u>Vera v. Dr. Bravo</u>**,** *supra*, págs. 334-335.

En <u>Meléndez González *et al.* v. M. Cuebas</u>, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. <u>Íd</u>., págs. 118-119.

**B.**[1]

Nuestro ordenamiento jurídico establece que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA sec. 2992. Las obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de éstas. Art. 1044 del Código Civil, 31 LPRA sec. 2994; <u>López Torres v. González Vázquez</u>, 163 DPR 275, 281 (2004); <u>Mercado Quilichini v. U.C.P.R.</u>, 143 DPR 610, 627 (1997).

En <u>Álvarez de Chaudens y otros v. Rivera Vázquez y otros</u>, 165 DPR 1, 17 (2005), nuestro más alto foro reiteró que en Puerto Rico rige el principio de la libertad de contratación, según el cual las partes contratantes

---

[1]Advertimos que somos conscientes de que el Código Civil de 1930 fue derogado mediante la aprobación de la Ley Núm. 55-2020, conocida como el "Código Civil de 2020". No obstante, esta última pieza legislativa en su Artículo 1812 establece lo siguiente: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación del caso, se utilizarán las disposiciones del Código Civil derogado.

pueden establecer los pactos, las cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372; S.L.G. Irizarry López v. S.L.G. García Cámara, 155 DPR 713, 724 (2001); Trinidad v. Chade, 153 DPR 280, 289 (2001); Plaza del Rey, Inc. v. Registrador, 133 DPR 188, 192-193 (1993); Casiano, Jr. v. Borintex Mfg. Corp., 133 DPR 127, 138 (1993). Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de Puerto Rico, 31 LPRA sec. 3375; Trinidad v. Chade, *supra*, pág. 289.

El Artículo 1054 del Código Civil de 1930 dispone que quedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier otro modo contravinieren a tenor de aquellas. 31 LPRA sec. 3018. Es importante destacar que la buena fe contractual no se manifiesta tan sólo al comienzo del contrato o en la fase de la negociación, sino que está presente mientras dure la relación contractual. En consecuencia, "cuando el incumplimiento de una obligación contractual produjere daños a una de las partes contratantes, procede una acción de daños y perjuicios por incumplimiento contractual". Soc. de Gananciales v. Vélez & Asoc., 145 DPR 508, 521 (1998). Por consiguiente, "[l]as acciones *ex contractu* solo pueden ser ejercidas por una parte contratante en contra de la otra". Rivera Sanfeliz v. Jta. Dir. FirstBank, 193 DPR 38, 57 (2015).

**C.**

La Núm. 64-2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA secs. 3501 *et seq.*, es un titulado especial mediante el cual se regula todo lo relativo a la existencia de las entidades jurídicas. Así pues, "[l]a figura de la corporación nace para facilitar y promover las actividades comerciales". Miramar Marine *et al* v.

Citi Walk et al., 198 DPR 684, 691 (2017). Cónsono con lo anterior, las corporaciones existen en virtud de una ficción jurídica instaurada a través de la Ley General de Corporaciones, la cual les faculta a "la realización o promoción de cualquier negocio o propósito lícito [...]". 14 LPRA sec. 3501(b). Por tanto, se les reconoce una serie de poderes y facultades con el objetivo de instaurar un mecanismo eficiente que les permita ejecutar y realizar transacciones comerciales y jurídicas. C.E. Díaz Olivo, Corporaciones: Tratado sobre Derecho Corporativo, Colombia, Nomos impresores, 2016, pág. 1.

La existencia de una corporación como ente jurídico es independiente de sus accionistas, directores y oficiales. Peguero y otros v. Hernández Pellot, 139 DPR 487, 502 (1995); D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993). Por esta razón, una de las características principales de la corporación es que cuenta con una personalidad jurídica distinta y separada a la de sus dueños. Multinational Ins. v. Benítez y otros, 193 DPR 67, 76 (2015); Santiago *et al.* v. Rodríguez et al., 181 DPR 204, 214 (2011). Puesto que, de no ser así, "se destruiría el principio de responsabilidad limitada que es consustancial con la ficción corporativa". Fleming v. Toa Alta Develop. Corp., 96 DPR 240, 244 (1968). Por consiguiente, se entiende que "el deudor y único responsable de las deudas de la corporación, lo es la persona jurídica de la corporación y no el propietario o accionista en su carácter personal." Díaz Olivo, *op cit.*, pág. 119.

A tono con ello, el Artículo 19.01(e) de la Ley Núm. 64-2009, *supra*, nos define lo que constituyen las compañías de responsabilidad limitada (CRL) de la siguiente manera: "Significa compañía de responsabilidad limitada creada por una (1) o más personas bajo las leyes de Puerto Rico, incluyendo sin limitaciones a una compañía de Responsabilidad Limitada con Fin Social. [..]". 14 LPRA sec. 3951. En consonancia con lo anterior, la Ley General de Corporaciones dispone la manera en la que se regulan las compañías de responsabilidad limitada, estableciendo que una vez ésta esté debidamente inscrita, posee una personalidad distinta y separada de

los miembros que la constituyen. Díaz Olivo, *op cit.*, pág. 569. Tanto es así que el Artículo 19.19 dispone que:

> Excepto que otra cosa se disponga en esta Ley, las deudas, obligaciones y responsabilidades de una CRL, que surjan de contrato, daños o de otra forma, serán deudas, obligaciones y responsabilidades **exclusivas** de la CRL, y **ningún miembro o administrador de la CRL estará obligado personalmente por dichas deudas, obligaciones y responsabilidades de la CRL, por el mero hecho de ser un miembro o actuar como administrador de la CRL**. 14 LPRA sec. 3969 (A) (énfasis suplido).

Es decir, una vez este tipo de entidad jurídica cumple con lo establecido por ley con respecto a su inscripción, obtiene una personalidad jurídica totalmente aparte a la de sus miembros y estos últimos no tienen responsabilidad personas por las obligaciones de la empresa. Díaz Olivo, *op. cit.*, pág. 60. "En esta entidad la relación entre los miembros y la gerencia está regulada primordialmente por el acuerdo entre ellos y en ausencia de acuerdo, por las disposiciones de la ley". Íd.

**III.**

En el recurso ante nos, Caparra solicitó que ejerzamos nuestra facultad revisora en cuanto a la disposición sumaria del caso de autos. Como parte de los argumentos planteados, el Apelante alegó que no es procedente en derecho la disposición sumaria parcial del pleito en contra de Bird Group, debido a que aún existen hechos materiales en controversia y que, además, no ha concluido el descubrimiento de prueba en el caso. Arguyó que el Apelado podría tratarse en realidad de un *alter ego* de DCK/Bird o incluso operar de forma conjunta como un *joint venture,* por lo que podría ser necesario descorrer el velo corporativo. No le asiste la razón. Nos explicamos.

Es norma claramente establecida en nuestro ordenamiento jurídico que el foro de instancia no podrá dictar sentencia sumaria cuando existan hechos materiales en controversia, cuando alegaciones afirmativas de la demanda no hayan sido refutadas, cuando surja de la prueba documental una controversia real en cuanto a algún hecho material o si como cuestión de derecho, la misma no procede. **Ahora bien, quien se oponga a una solicitud de sentencia sumaria no podrá descansar en meras**

**afirmaciones contenidas en sus alegaciones, sino que tendrá que presentar evidencia que demuestre que existen hechos materiales en controversia**. Roldán Flores v. M. Cuebas *et al.*, *supra*, pág. 677; Ramos Pérez v. Univisión, *supra.*

Según hemos adelantado, al momento de revisar una determinación del foro de instancia respecto a una sentencia sumaria, estamos llamados a realizar una revisión *de novo* y limitados únicamente a adjudicar con los documentos presentados ante el foro de instancia. Realizado dicho análisis, concluimos que Caparra no logró controvertir los hechos materiales e incontrovertidos expuestos por el Apelado en su "**Solicitud de Sentencia Sumaria Parcial a favor de Bird Group, LLC.**", los cuales fueron sustentados por documentación acreditativa a esos efectos. En vista de ello, y para propósitos adjudicativos, acogemos como nuestros los hechos incontrovertidos, según fueron desglosados en la *Sentencia Parcial* apelada, por estar todos sustentados en la prueba documental que obra en los autos. Los mismos leen como sigue:

1. Bird Group, LLC es una compañía de responsabilidad limitada, organizada bajo las leyes de Puerto Rico y debidamente inscrita en el Departamento de Estado bajo el número de registro 3537.
2. El 19 de abril de 2013, dck puerto rico, LLC se organizó bajo las leyes de Puerto Rico como una compañía de responsabilidad limitada, inscrita en el Departamento de Estado bajo el registro número 3994.
3. El 9 de mayo de 2013, Plaza Internacional contrató, mediante un contrato de construcción, a dck puerto rico, LLC para que esta fungiera como contratista en la Obra.
4. El 29 de mayo de 2013, dck puerto rico, LLC enmendó su nombre corporativo a dck/Bird Group, LLC.
5. La compañía dck puerto rico, LLC y dck/Bird Group, LLC (en adelante "dck/BG") son la misma entidad jurídica.
6. La parte demandada dck/BG era una compañía de responsabilidad limitada, organizada bajo las leyes de Puerto Rico.
7. El 13 de febrero de 2022, dck/BG fue cancelada.
8. Bird Group y dck/BG son dos entidades con personalidades jurídicas diferentes, ambas debidamente inscritas en el Departamento de Estado, con números de registro de 3537 y 3994 respectivamente.
9. El 12 de junio de 2013, dck/BG, dck international, LLC y Bird Group suscribieron el Operating Agreement con fecha de efectividad de 9 de mayo de 2013.
10. Por virtud de ese Operating Agreement, Bird Group advino miembro ("member") de la compañía dck/BG, con una participación de un 20%.

11. El Operating Agreement define miembro ("member") como: "each of dck and Bird executing this Agreement and any Person who subsequently is admitted as a Member of the Company."

12. Conforme el Operating Agreement, el manejo de dck/BG se llevaría a cabo por un Management Committee, el cual establecería las políticas y procedimientos de esta:

   a. Management by Management Committee. The business, property and affairs of the [dck/BG] shall be managed by the Management Committee that shall establish policies and procedures for the [dck/BG]. Except for restrictions set forth in this Agreement (including authority granted hereby to the Manager), the Management Committee shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of the [dck/BG], to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs, including the improvement, repair, encumbrance and disposition of all or any part of the property held by the Company. The Management Committee, at its discretion, shall appoint other necessary officers for the [dck/BG].

13. Según el Operating Agreement, el Management Committee consistiría en cuatro (4) miembros, titulados "Representatives". Tres (3) de estos serían designados y representarían a dck, mientras que uno (1) sería designado y representaría a Bird Group.

14. Conforme el Operating Agreement, entre las funciones de Bird Group como miembro, se encontraba supervisar y dirigir los trabajos relacionados a la construcción y desarrollo del centro comercial "The Mall of San Juan" en representación de dck/BG.

15. Según la Sección 5.5.5 del Operating Agreement, los miembros no serán responsables frente a terceras personas por actos llevados a cabo por dck/BG u otros miembros.

16. El 27 de febrero de 2014, Caparra fue subcontratada por dck/BG para realizar trabajos relacionados a la construcción y desarrollo de la Obra.

17. El 27 de octubre de 2015, dck/BG, dck international, LLC y Bird Group suscribieron el Settlement Agreement.

18. El Settlement Agreement tuvo el fin de transigir cualquier balance pendiente que se le debía a Bird Group por el trabajo realizado o el que sería realizado en cuanto a la Obra, incluyendo cualquier reclamación, demanda o disputa por parte de Bird Group relacionado a la Obra:

   WHEREAS, [dck/BG], dck [international, LLC], and Bird [Group] wish to compromise, settle, and satisfy any and all open and pending account balances due Bird in any manner for work performed or to be performed and related to the Project including

any claims, demands, and disputes by Bird with regard to any service provided or to be provided by arising from or related to the Project.

19. En consideración con el acuerdo llegado, Bird Group se comprometió a continuar con el cierre del proyecto "The Mall of San Juan" y cooperar en el cierre del proyecto y el del subcontrato de Lord Electric.

20. Conforme el Settlement Agreement, dck/BG se comprometió a pagar todas las deudas y obligaciones del proyecto, incluidas las de los subcontratistas y suplidores. Además, se comprometió a defender, indemnizar y dejar a salvo a Bird Group de cualquier reclamación por no pago por parte de dck/BG.

[dck/BG] hereby acknowledges that it has paid or will pay any and all of its debts and obligations arising out of the Project including, but not limited to, obligations to its subcontractors and suppliers. In addition, [dck/BG] shall defend, indemnify and hold harmless [dck international, LLC] and Bird [Group] from any claims of the foregoing parties for non-payment by the [dck/BG].

21. Conforme el Settlement Agreement, Bird Group se comprometió a defender, indemnizar y dejar a salvo a dck/BG de cualquier reclamación de los empleados de Bird Group. No obstante,se estableció que dck/BG sería responsable de los subcontratistas y suplidores de primer nivel ("first tier") del Proyecto (la Obra).

In consideration of the payments from [dck/BG] described above, Bird [Group] hereby releases, remises, relinquishes, acquits, waives and forever discharges all claims, causes of action, demands and costs against the Released Parties which Bird [Group] has or may have arising out of any work performed, to be performed, or equipment and materials supplied on this Project. Furthermore, Bird agrees to defend and indemnify the Released Parties against any and all claims or demands asserted by any employee on this Project or any subcontractor, supplier or lower tier payment obligation of Bird [Group] who claims that Bird [Group] has failed to fully and completely pay them any amounts owed. First tier subcontractors or suppliers for the Project will remain in the obligation of the [dck/BG]. This waiver and release from Bird [Group] is intended to be and shall be full and final on the Project except for any breach of the terms of this Agreement by [dck/BG].

22. Caparra es un subcontratista de primer nivel ("First Tier") de dck/BG en proyecto.

23. El 22 de diciembre de 2015, Plaza Internacional y dck/BG suscribieron un *Acuerdo de Transacción y Última Enmienda a Contrato de Construcción*.

Un análisis de la *Sentencia Parcial* apelada, en unión con la documentación presentada por las partes en sus respectivas comparecencias, revela que Caparra no controvirtió con prueba documental los hechos incontrovertidos que sustentó Bird Group para

solicitar la disposición sumaria del caso presentado en su contra. Ni de la oposición presentada por el Apelante, ni del expediente electrónico ante el TPI surge contrato alguno suscrito entre Caparra y Bird Group. El Apelante descansó en meras aseveraciones para justificar la alegada responsabilidad contractual que tenía Bird Group por el presunto incumplimiento de pago de este último y el restante de los codemandados que fueron acumulados en la "**Demanda**". A esos efectos, sostuvo que el Apelado no era un mero supervisor y director bajo el control y directrices de DCK/Bird, sino que Bird Group era la entidad controladora y con injerencia directa en cuanto a la forma y manera en que Caparra y otros subcontratistas tenían que realizar sus respectivas funciones. Sin embargo, no unió evidencia documental suficiente que apoyara dichas expresiones y que tuvieran el consecutivo efecto de crear una controversia material y medular que obligara al TPI a denegar el petitorio de Bird Group.

Así pues, en ausencia de prueba que controvirtiera la inexistencia de una obligación contractual que vinculara a Caparra y a Bird Group bajo la cual la primera podía reclamar un alegado incumplimiento con el abono de los daños, concluimos que el foro apelado actuó correctamente al desestimar el litigio en contra del Apelado. Ello pues, DCK/Bird era una compañía de responsabilidad limitada debidamente registrada en el Departamento de Estado al momento en que se efectuó la contratación. Por tanto, las deudas, obligaciones y responsabilidades de esta última que pudiesen surgir del contrato suscrito con Caparra, así como los alegados daños son deudas, obligaciones y responsabilidades **exclusivas** de DCK/Bird, y **ni Bird Group o ningún miembro o administrador está obligado por dichas deudas, obligaciones y responsabilidades**. *Véase,* 14 LPRA sec. 3969 (A). Tampoco se desprende del *Operating Agreement* en controversia que el Apelado tenía responsabilidad alguna por las obligaciones contraídas por DCK/Bird relacionadas con las obras de construcción contratadas. De hecho, tal y como lo expresó la juzgadora de instancia, la Sección 5.5.5 de *Operating Agreement* dispone que los

miembros de DCK/Bird no serían responsables frente a terceras personas por actos llevados a cabo por DCK/Bird u otros miembros.

En cuanto al argumento esgrimido por Caparra sobre la doctrina del *alter ego* y la procedencia de la causa de acción para descorrer el velo corporativo, sostenemos que tampoco le asiste la razón al Apelante.

Como punto de partida, debemos hacer hincapié en lo resuelto por el Tribunal Supremo en León Torres v. Rivera Lebrón, *supra*, a los efectos de que los tribunales no podemos desprendernos e ignorar las reclamaciones traídas ante nuestra consideración en la demanda y actuar como si un demandante tuviese la potestad de enmendar o suplementar sus alegaciones a través de las aseveraciones y argumentos sometidos en una solicitud de sentencia sumaria, la oposición o en sus escritos apelativos, sin pasar por el rigor de solicitar enmienda conforme el estado de derecho procesal. Íd., pág. 49. "**Así, el procedimiento adecuado en estas circunstancias es solicitar la anuencia del tribunal para enmendar las alegaciones**". Íd. (énfasis suplido).

Así pues, coincidimos con el TPI a los efectos de que Caparra no podía presentar reclamaciones o teorías de responsabilidad nuevas en su oposición a la solicitud de sentencia sumaria parcial. Por esta razón, no nos convence el argumento de que el mismo se efectuó en modo defensivo. Lo cierto es que la Regla 13.1 de Procedimiento Civil, *supra*, provee el mecanismo correcto para que una parte demandante pueda incorporar causas de acción o alegaciones nuevas al pleito. Ninguno de los escenarios dispuestos en la aludida Regla aplica al caso de autos, pues el propio Apelante incumplió con el rigor procesal requerido. Pretender utilizar la oposición a la solicitud de sentencia sumaria parcial como un mecanismo para traer nuevas alegaciones y solicitar que se extienda el descubrimiento de prueba bajo la misma premisa atenta contra el propósito para el cual fue instituida en nuestro acervo jurídico la Regla 36.3 de Procedimiento Civil, *supra*.

Relacionado con lo anterior, Caparra arguyó que el descubrimiento de prueba no había concluido, pues bajo su teoría era imposible culminarlo

pues el pleito se estaba ventilando en rebeldía hasta el año 2022. Sin embargo, surge del expediente que el 26 de agosto de 2022, las partes presentaron "**Moción Conjunta en Cumplimiento de Orden**"[2] en la cual informaron al TPI que el descubrimiento de prueba debía culminar para febrero de 2023. En consideración a lo allí expuesto, el foro *a quo* dictó *Orden* en igual fecha en la que tomó conocimiento de lo esbozado por las partes y advirtió que las fechas no podían ser modificadas sin previa autorización de dicho foro. Así el trámite, el 8 de septiembre de 2022, Bird Group presentó "**Moción Solicitando Extensión de Término**" en la que solicitó hasta el 3 de octubre de 2022 para notificar descubrimiento de prueba escrito. Como consecuencia, el 29 de septiembre de 2022, el foro primario emitió *Orden* mediante la cual concedió hasta el 11 de octubre de 2022. El mismo 11 de octubre de 2022, Bird Group presentó escrito al expediente judicial en el que informó haber cursado un pliego de interrogatorios y requerimiento de producción de documentos.

No obstante todos los trámites acaecidos sobre el descubrimiento de prueba, Caparra no compareció para solicitar extensión de dicho término. De hecho, nótese que del expediente sólo surge que Bird Group solicitó una extensión del término en cuanto al descubrimiento de prueba escrito. Así, el análisis de las incidencias procesales ocurridas en el caso, conducen a la conclusión de que para el momento en que se presentó la moción de sentencia sumaria parcial el descubrimiento de prueba había culminado. Valga destacar que el caso no tuvo movimiento por espacio de aproximadamente cinco (5) meses hasta que el Apelado radicó la "**Solicitud de Sentencia Sumaria Parcial a favor de Bird Group, LLC.**", luego de que el plazo dispuesto por el TPI para culminar el descubrimiento de prueba había terminado.

Es, pues, evidente que el Apelante tuvo tiempo suficiente para solicitar al tribunal autorización para extender el descubrimiento de prueba y no lo hizo. No fue hasta la presentación de su oposición que planteó los

---

[2] *Véase*, Entrada Núm. 99 de del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

argumentos sobre la doctrina de *alter ego*, la presunta posibilidad de que existiera fraude de acreedores y alegó que el descubrimiento de prueba no había culminado, debido a que aún faltaba celebrar algunas deposiciones. Lo anterior, no es cónsono con lo acaecido ante el foro primario y las determinaciones sobre el manejo del caso consignadas por el TPI, por lo que concluimos que actuó correctamente el foro *a quo* al colegir que el descubrimiento de prueba había terminado. Nuestra conclusión tiene aún más relevancia cuando se ha reiterado que en nuestro ordenamiento el derecho es rogado y del expediente del TPI se desprende que Caparra nunca compareció en solicitud de extensión del mismo cuando existían determinaciones del foro que establecían una fecha de culminación de dicho proceso.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *confirmamos* la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones